STEPHEN R. BASSER(Bar No. 121590)
SAMUEL M. WARD (Bar No. 216562)
**BARRACK RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com
sward@barrack.com

*Counsel for Plaintiffs Russell Autry, Jacob*
*Benjamin, and Victoria Phillips*
*Additional Counsel on Signature Page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL AUTRY, JACOB BENJAMIN, and VICTORIA PHILLIPS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>POSTMEDS, INC. d/b/a TRUEPILL,<br><br>Defendant | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiffs Russell Autry ("Autry"), Jacob Benjamin ("Benjamin"), and Victoria Phillips ("Phillips") (collectively "Plaintiffs"), by and through their attorneys of record, upon personal knowledge as to their own respective acts and experiences, and upon information and belief as to all other matters, bring this class action complaint against defendant PostMeds, Inc., d/b/a Truepill ("Postmeds" or "Defendant"), and allege as follows:

**INTRODUCTION**

1.      Plaintiffs bring this class action against Defendant Postmeds for its failure to properly secure and safeguard Plaintiffs' and Class Members' protected medical and health information stored within Defendant's information network and servers, including, without limitation, "protected health information" or "PHI",[1] and "personally identifiable information" or "PII",[2] as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (collectively, PHI and PII are also referred to therein as "Private Information").

2.      Postmeds is an online pharmacy fulfillment company that fills prescriptions for telehealth services, and online pharmacies. Doing business as Truepill, Defendant fulfills prescriptions for a variety of companies, including, GoodRx, Hims, and others. Many consumers whose healthcare data has been entrusted to Postmeds are not even aware that their data is in Postmeds' possession. Postmeds provides prescriptions to approximately 2.3 million consumers throughout the United States. Postmeds is headquartered in Hayward California. In the course of fulfilling prescriptions for consumers Defendant acquired, collected, and stored Plaintiffs' and Class Members' PII and PHI.  Defendant knew, at all times material, that it was collecting and

---

[1] Protected Health Information ("PHI") is a category of information that refers to an individual's medical records and history, which is protected under the Health Insurance Portability and Accountability Act. Inter alia, PHI includes test results, procedure descriptions, diagnoses, personal or family medical histories, and data points applied to a set of demographic information for a particular patient. PHI is inclusive of and incorporates personally identifiable information.

[2] Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).

1

storing, and responsible for the security of sensitive data, including Plaintiffs' and Class Members' highly confidential PII and PHI.

3. Plaintiffs seek to hold Defendant responsible for the harms it caused and will continue to cause Plaintiffs and approximately 2.3 million other similarly situated persons by virtue of a massive and preventable cyberattack that began no later than August 31, 2023 and continued until at least September 1, 2023, by which cybercriminals infiltrated Defendant's computer system on which the Private Information that Defendant was entrusted with and responsible for, was stored (the "Data Breach").[3] Plaintiffs further seek to hold Defendant responsible for not ensuring that the PII and PHI was maintained in a manner consistent with industry standards, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule (45 CFR, Parts 160 and 164(A) and (E)), the HIPAA Security Rule (45 CFR, Parts 160 and 164(A) and (C)), and other relevant standards.

4. Defendant knew or should have known of the cyber-attack by no later than August 31, 2021. Nonetheless, Defendant waited until October 30, 2023, approximately one month, to inform victims of the Data Breach via a letter (the "Notice"). This delay was especially critical because many, if not most, Class Members were not even aware that their PHI and PII was in the possession of Postmeds.

5. HIPAA establishes obligations for the protection of individuals' medical records and other personal health information. HIPAA, in general, applies to healthcare providers, health plans/insurers, health care clearinghouses, and those health care providers that conduct certain health care transactions electronically, and sets requirements for Defendant's maintenance of Plaintiffs' and Class Members' PII and PHI. More specifically, HIPAA requires appropriate safeguards be maintained by organizations such as Defendant to protect the privacy of patient health information and sets limits and conditions on the uses and disclosures that may be made of such information without express customer/patient authorization. HIPAA also gives a series of

---

[3] https://assets.website-files.com/650b733c29599811871814e3/65403dd34d99148b02ca8ece_4853-3845-4924-v1.pdf, last visited November 27, 2023.

rights to patients over their PII and PHI, including rights to examine and obtain copies of their health records, and to request corrections thereto.

6.      Additionally, the so-called "HIPAA Security Rule" establishes national standards to protect individuals' electronic health information that is created, received, used, or maintained by a covered entity. The HIPAA Security Rule requires appropriate administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of electronic PHI.

7.      By obtaining, collecting, storing, using, and deriving a benefit from Plaintiffs' and Class Members' PII and PHI, Defendant assumed legal and equitable duties to those individuals. These duties arise from HIPAA and other state and federal statutes and regulations, as well as common law principles.  HIPAA provides the standard of procedure by which a medical provider must operate when collecting, storing, and maintaining PHI and imposes a duty on Defendant to maintain the confidentiality of such information.  Defendant is charged, *inter alia*, with legal violations predicated upon the duties set forth in HIPAA that underpin those violations and that were not honored, or were otherwise breached by Postmeds.

8.      Defendant disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiffs' and Class Members' PII and PHI was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the PII and PHI of Plaintiffs and Class Members were compromised and damaged through access by and disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party that seeks to profit off this disclosure by defrauding Plaintiffs and Class Members in the future – and are entitled to damages.  In addition, Plaintiffs and Class Members, who have a continuing interest in ensuring that their information is and remains safe, are entitled to injunctive and other equitable relief.

# PARTIES

**Plaintiff Russell Autry**

9.    Plaintiff Russell Autry is, and at all relevant times was, a citizen of Arkansas and a resident of Cabot. On October 30, 2023, Plaintiff Autry received the Notice of the Data Breach, which stated that Plaintiff Autry's name and prescription information may have been accessed in the Data Breach. A copy of the Notice of Data Breach received by Plaintiff Autry is attached hereto as Exhibit A.

10.    The confidentiality of Plaintiff Autry's sensitive information has been irreparably harmed. For the rest of his life, Plaintiff Autry will have to worry about when and how his sensitive information may be shared or used to his detriment.

11.    As a result of the Data Breach, Plaintiff Autry spent time dealing with the consequences of the Data Breach, which includes times spent verifying the legitimacy of the Notice of Data Breach and self-monitoring his accounts.

12.    Plaintiff Autry is very careful about not sharing his sensitive Private Information. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source

13.     Plaintiff Autry suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and experiences fear and anxiety and increased concern for the loss of his privacy.


**Plaintiff Jacob Benjamin**

14.    Plaintiff Jacob Benjamin is, and at all relevant times was, a citizen of California and a resident of Clovis. On October 30, 2023, Plaintiff Benjamin received the Notice of the Data Breach, which stated that Plaintiff Benjamin's name and prescription information may have been accessed in the Data Breach. A copy of the Notice of Data Breach received by Plaintiff Benjamin is attached hereto as Exhibit B.

15.     The confidentiality of Plaintiff Benjamin's sensitive information has been irreparably harmed. For the rest of his life, Plaintiff Benjamin will have to worry about when and how his sensitive information may be shared or used to his detriment.

16.     As a result of the Data Breach, Plaintiff Benjamin spent time dealing with the consequences of the Data Breach, which includes times spent verifying the legitimacy of the Notice of Data Breach and self-monitoring his accounts.

17.     Plaintiff Benjamin is very careful about not sharing his sensitive Private Information. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source

18.     Plaintiff Benjamin suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and experiences fear and anxiety and increased concern for the loss of his privacy.

**Plaintiff Victoria Phillips**

19.     Plaintiff Victoria Phillips is, and at all relevant times was, a citizen of Pennsylvania and a resident of Meadville. On or about October 30, 2023, Plaintiff Phillips received the Notice of the Data Breach, which stated that Plaintiff Phillips's name and prescription information may have been accessed in the Data Breach. A copy of the Notice of Data Breach received by Plaintiff Phillips is attached hereto as Exhibit C.

20.     The confidentiality of Plaintiff Phillips' sensitive information has been irreparably harmed. For the rest of her life, Plaintiff Phillips will have to worry about when and how her sensitive information may be shared or used to her detriment.

21.     As a result of the Data Breach, Plaintiff Phillips spent time dealing with the consequences of the Data Breach, which includes times spent verifying the legitimacy of the Notice of Data Breach and self-monitoring her accounts and credit report.

22.     Plaintiff Phillips is very careful about not sharing her sensitive Private Information. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source

23.     Plaintiff Phillips suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and experiences fear and anxiety and increased concern for the loss of her privacy.

**Defendant Postmeds, Inc., d/b/a Truepill**

24.     Defendant Postmeds is an online pharmacy fulfillment company that fills prescriptions for telehealth services, and online pharmacies. Doing business as Truepill, Defendant fulfills prescriptions for a variety of companies, including, GoodRx, Hims, and others. Postmeds provides prescriptions to approximately 2.3 million consumers throughout the United States. Postmeds is incorporated in Delaware and maintains its headquarters at 3121 Diablo Avenue, Hayward, California.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act, which affords federal courts with original jurisdiction over cases where any member of the plaintiff class is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Here, the nationwide and Arkansas classes include recipients of Defendant's Notice of Data Breach, which, include non-California citizens.  Since Defendant is a California-based entity headquartered in Hayward, there is minimal diversity between at least one member of the Nationwide Class and Defendant.

26.     This Court also has subject matter jurisdiction over this case pursuant to 28. U.S.C. § 1331 because several of the claims for relief herein are dependent or predicted upon violating duties imposed upon Postmeds by federal law and regulation, including HIPAA, as more fully alleged below.

27.     This Court has general personal jurisdiction over Defendant because Defendant operates its principal place of business in Hayward, California. Additionally, this Court also has

specific personal jurisdiction over Defendant because it has minimum contacts with California, as it is located and conducts substantial business in or from California.

28.    This Court has supplemental jurisdiction over any claims not arising, in whole or in part, from violation of federal law.

29.    This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District, and because Defendant conducts a substantial part of its business within this District.

## FACTUAL BACKGROUND

### The Data Breach

30.    On or about October 30, 2023, Defendant sent Plaintiffs and other victims of the Data Breach the Notice Letter informing them that:

> Postmeds is a pharmacy company that fulfills prescription orders. At Postmeds, we are committed to providing outstanding pharmacy services and protecting the information in our case. We recently identified and addressed a cybersecurity incident involving some of that information and wanted to share with you what happened and the steps were are taking in response.[4]

31.    The Notice Letter acknowledges that Defendant learned of the Data Breach on August 31, 2023, stating that:

> On August 31, 2023, we discovered that a bad actor gained access to a subset of files used for pharmacy management and fulfillment services. We immediately launched an investigation with assistance from cybersecurity professionals and worked quickly to secure our environment.[5]

32.    Despite learning of the Data Breach no later than August 31, 2023, Defendant did not begin to inform impacted individuals after the Data Breach's occurrence, and the remedial measures undertaken to ensure such a breach does not occur again, until on or around October 30, 2023. Critically, many Class Members are not even aware that Postmeds fulfills their

---

[4] See Exhibit A attached hereto.
[5] Id.

7

prescriptions, so they could not have been aware of the need to take affirmative steps to protect themselves from identify theft or other forms of fraud absent direct notice from Postmeds.

33.     This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiffs and Class Members of the Data Breach's critical facts. Without these details, Plaintiffs' and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

34.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiffs and Class Members, ultimately causing the exposure of Private Information.

35.     Upon information and belief, Defendant continues to maintain Plaintiffs' PHI and PII, as well as that of all other Class Members.

**Postmeds' Business and Obligation to Preserve and Protect Confidentiality and Privacy**

36.     Postmeds is an online pharmacy fulfillment company that fills prescriptions for third parties, such as telehealth services and online pharmacies. Doing business as Truepill, Defendant fulfills prescriptions for a variety of companies, including, GoodRx, Hims, and others. As a result of Postmeds' role in fulfilling prescriptions for others, many consumers whose healthcare data has been entrusted to Postmeds are not even aware that their data is in Postmeds' possession. Postmeds is headquartered in Hayward, California.

37.     Plaintiffs and Class Members are consumers who have or have had prescriptions filled by Postmeds.

38.     As a consequence of having their prescriptions fulfilled by Defendant, Plaintiffs and Class Members were required to provide sensitive and confidential PHI and PII to their healthcare providers, including telehealth providers and/or online pharmacies, which, in turn, provided that PHI and PII to Defendant.

39.     On its website, Defendant asserts that "[w]e take patient and partner confidentiality seriously. Our technology and quality processes ensure your experience meets rigorous privacy and security standards.[6]

40.     Defendant's Notice of HIPAA Privacy Practices (the "Privacy Policy") acknowledges that "[w]e are required by law to maintain the privacy and security of your protected health information."[7] Defendant's Privacy Policy further acknowledges that is not free to share PHI and PII: "[w]e have to meet many conditions in the law before we can share your information . . . ."[8]

41.     Plaintiffs and Class Members provided their PHI and PII to their healthcare providers with the reasonable expectation and mutual understanding that such information would be kept confidential and secure from unauthorized access. The information collected and maintained by Defendant included the PHI and PII of Plaintiffs and Class Members.

42.     Plaintiffs and Class Members were reliant on Defendant to keep their PHI and PII confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiffs and Class Members, who value the confidentiality of their Private Information and demand security to safeguard their Private Information, took reasonable steps to maintain the confidentiality of their PII/PHI.

43.     At all times material, Defendant was under a duty to adopt and implement reasonable measures to protect the Private Information of Plaintiffs and Class Members from involuntary disclosure to third parties. And to that end, Defendant also has a legal duty created by FTC Act, HIPAA, contract, industry standards, and representations made to Plaintiffs and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

44.     Defendant derived a substantial economic benefit from collecting Plaintiffs' and Class Members' Private Information. In addition, obtaining, collecting, using, and deriving a

---

[6] https://www.truepill.com/ last visited November 22, 2023.
[7] https://www.truepill.com/legal/nopp last visited November 22, 2023.
[8] *Id.*

9

benefit from Plaintiffs' and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' Private Information from disclosure.

45.     Plaintiffs are informed and believe and thereupon allege that in order to have prescriptions fulfilled by Defendant, the PHI and PII of Plaintiffs and Class Members was required to be shared with Defendant, including the PHI and PII compromised in the Data Breach.

46.     By obtaining, collecting, using, Plaintiffs' and Class Members' Private Information, Defendant assumed legal and equitable duties, and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure.

47.     Given the highly sensitive nature of the PII and PHI it possessed and the sensitivity of the medical and health services it provides, Defendant had a duty to safeguard, protect, and encrypt Plaintiffs' and Class Members' PII and PHI.

48.     As a condition to obtain medical services from Defendant, Plaintiffs and Class Members were required to give their sensitive and confidential Private Information to Defendant.

49.     Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiffs' and Class Members' Private Information, Defendant would be unable to perform its medical services.

50.     By obtaining, collecting, and storing the Private Information of Plaintiffs and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the Private Information from disclosure.

51.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendant to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

52.     Defendant acknowledged its duty and responsibility to maintain and protect the Private Information of Class Members, demonstrating an understanding of the importance of securing Private Information.

53.     Defendant's negligence in safeguarding the Private Information of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

54.     Defendant was not permitted to disclose Plaintiffs' and Class Members' Private Information for any reason that would apply in this situation.  The disclosure of Plaintiffs' and Class Members' Private Information via the Data Breach was not permitted per Defendant's own Privacy Policy.

55.      Additionally, Defendant is duty bound to adhere to its Notice of Privacy Practices relating to the Confidentiality of PHI. This policy clearly states that Defendant is "required by law to maintain the privacy and security of your protected health information."[9]

56.     Defendant had obligations created by the Health Insurance Portability and Accountability Act ("HIPAA"), contract, industry standards, common law, and its own promises and representations made to Plaintiffs and Class Members to keep their Private Information confidential and protect it from unauthorized access and disclosure.

57.     Plaintiffs and Class Members had a reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep the Private Information they provided confidential and secure from unauthorized access and disclosure.

58.     Defendant failed to use reasonable security procedures and practices appropriate to safeguard the sensitive, unencrypted information it was maintaining for Plaintiffs and Class Members, consequently enabling and causing the exposure of Private Information of approximately 2.3 million individuals.

59.     Because of Defendant's negligence and misconduct in failing to keep their information confidential, the unencrypted Private Information of Plaintiffs and Class Members

---

[9] https://www.truepill.com/legal/nopp last visited November 22, 2023.

has been expropriated by Unauthorized individuals who can now access the PHI and PII of Plaintiffs and Class Members and use it as they please.

60.     Plaintiffs and Class Members now face a real, present and substantially increased risk of fraud and identity theft and have lost the benefit of the bargain they made with Defendant when receiving services.

### *Data Breaches Lead to Identity Theft and Cognizable Injuries.*

61.     The PII and PHI of consumers, such as Plaintiffs and Class Members, is valuable and has been commoditized in recent years.

62.     Defendant was also aware of the significant repercussions that would result from its failure to do protect Private Information and knew, or should have known, the importance of safeguarding the Private Information entrusted to it and of the foreseeable consequences if its data security were breached.  Nonetheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach from occurring.

63.     Identity theft associated with data breaches is particularly pernicious due to the fact that the information is made available, and has usefulness to identity thieves, for an extended period of time after it is stolen. As a result, victims suffer both immediate and long-lasting exposure and are susceptible to further injury over the passage of time.

64.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the other Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.  They must now be vigilant and continuously review their credit reports for suspected incidents of identity theft, educate themselves about security freezes, fraud alerts, and take steps to protect themselves against identity theft, which will extend indefinitely into the future.

65.     Even absent any adverse use, consumers suffer injury from the simple fact that information associated with their financial accounts and identity has been stolen. When such sensitive information is stolen, accounts become less secure, and the information once used to sign up for bank accounts and other financial services is no longer as reliable as it had been before

the theft. Thus, consumers must spend time and money to re-secure their financial position and rebuild the good standing they once had in the financial community.

66. Plaintiffs and the other Class Members also suffer ascertainable losses in the form of opportunity costs and the time and costs reasonably incurred to remedy or mitigate the effects of the Data Breach, including:

A. Monitoring compromised accounts for fraudulent charges;

B. Canceling and reissuing credit and debit cards linked to the financial information in possession of Defendant;

C. Purchasing credit monitoring and identity theft prevention;

D. Addressing their inability to withdraw funds linked to compromised accounts;

E. Taking trips to banks and waiting in line to obtain funds held in limited accounts;

F. Taking trips to banks and waiting in line to verify their identities in order to restore access to the accounts;

G. Placing freezes and alerts with credit reporting agencies;

H. Spending time on the phone with or at financial institutions to dispute fraudulent charges;

I. Contacting their financial institutions and closing or modifying financial accounts;

J. Resetting automatic billing and payment instructions from compromised credit and debit cards to new cards;

K. Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised accounts that had to be cancelled; and,

L. Closely reviewing and monitoring financial accounts and credit reports for unauthorized activity for years to come.

13

67.     Moreover, Plaintiffs and the other Class Members have an interest in ensuring that Defendant implement reasonable security measures and safeguards to maintain the integrity and confidentiality of the Private Information, including making sure that the storage of data or documents containing Private Information is not accessible by unauthorized persons, that access to such data is sufficiently protected, and that the Private Information remaining in the possession of Defendant is fully secure, remains secure, and is not subject to future theft.

68.     As a further direct and proximate result of Defendant's actions and inactions, Plaintiffs and the other Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

69.     As a direct and proximate result of Defendant's wrongful actions or omissions here, resulting in the Data Breach and the unauthorized release and disclosure of Plaintiffs' and other Class Members' Private Information, Plaintiffs and all Class Members have suffered, and will continue to suffer, ascertainable losses, economic damages, and other actual injury and harm, including, *inter alia*, (i) the resulting increased and imminent risk of future ascertainable losses, economic damages and other actual injury and harm, (ii) the opportunity cost and value of lost time they must spend to monitor their financial accounts and other accounts—for which they are entitled to compensation; and (iii) emotional distress as a result of having their Private Information accessed and exfiltrated in the Data Breach.

### *Postmeds Was Well Aware of the Threat of Cyber Theft and Exfiltration in the Healthcare Industry*

70.     Defendant was entrusted with highly sensitive and confidential PII and PHI of Plaintiffs and class members as a condition of providing its services, prescription fulfillment. Defendant collected, stored, and maintained that information and assured consumers, via its Privacy Policy, that it was acting to protect that PHI and PII pursuant to HIPAA and to prevent its disclosure.

71.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and financial information. Plaintiffs and Class Members relied

on Defendant to keep their PII and PHI and financial information confidential and securely maintained, to use this information for business and healthcare purposes only, and to make only authorized disclosures of this information.

72.    Defendant could have prevented the Data Breach by assuring that the Private Information at issue was properly secured.

73.    Defendant's overt negligence in safeguarding Plaintiffs' and Class Members' PII and PHI is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.  Further, as an entity in the healthcare space, Defendant was on notice that companies in the healthcare industry are targets for data breaches.

74.    The healthcare industry in particular has experienced a large number of high-profile cyberattacks. Cyberattacks, generally, have become increasingly more common. In 2021, a record 715 healthcare data breaches reported, an increase of approximately 100% since 2017.[10]

75.    This trend continued in 2022, with 707 healthcare breaches reported, still near record highs.[11] Additionally, according to the HIPAA Journal, the five largest healthcare data breaches reported in 2022 impacted the healthcare records of approximately 13.3 million people.[12] Thus, Defendant was on further notice regarding the increased risks of inadequate cybersecurity. In February 2022, the cybersecurity arm of the U.S. Department of Health and Human Services ("HHS") issued a warning to hospitals and healthcare systems about a dramatic rise in cyberattacks, including ransomware attacks, urging facilities to shore up their cyber

---

[10] 2022 Healthcare Data Breach Report, https://www.hipaajournal.com/2022-healthcare-data-breach-report/ (last accessed November 23, 2023).
[11] *Id.*
[12] *Id.*

15

defenses.[13]  Indeed, HHS's cybersecurity arm has issued yet another warning about increased cyberattacks that urged vigilance with respect to data security.[14]

76.     In the context of data breaches, healthcare is "by far the most affected industry sector."[15]  Further, cybersecurity breaches in the healthcare industry are particularly devastating, given the frequency of such breaches and the fact that healthcare providers maintain highly sensitive and detailed PII.[16]

77.     A TENABLE study analyzing publicly disclosed healthcare sector breaches from January 2020 to February 2021 reported that "records were confirmed to have been exposed in nearly 93% of the breaches."[17]

78.     This is such a breach of cybersecurity where highly detailed PII and PHI records maintained and collected by a healthcare entity were accessed and/or acquired by a cybercriminal.

79.     Due to the high-profile nature of these breaches, and other breaches of its kind, Defendant was and/or certainly should have been on notice and aware of such attacks occurring in the healthcare industry and, therefore, should have assumed and adequately performed the duty of preparing for such an imminent attack. This is especially true given that Defendant is a large, sophisticated operation with the resources to put adequate data security protocols in place and assure the security of the data collected by it and entrusted to it by Plaintiffs and Class Members.

---

[13]  Rebecca Pifer, Tenet says 'cybersecurity incident' disrupted hospital operations, HEALTHCAREDIVE (Apr. 26, 2022), https://www.healthcaredive.com/news/tenet-sayscybersecurity-incident-disrupted-hospital-operations/622692/ (last accessed November 22, 2023).

[14] Id. (HHS warned healthcare providers about the increased potential for attacks by a ransomware group called Hive, "[c]alling it one of the 'most active ransomware operators in the cybercriminal ecosystem,' the agency said reports have linked Hive to attacks on 355 companies within 100 days of its launch last June — nearly three a day.").

[15]  Tenable Security Response Team, Healthcare Security, TENABLE (Mar. 10, 2021), https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-in-covid-19-era-breaches (last accessed November 22, 2023).

[16] Id.

[17] Id.

80.    Yet, despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Plaintiffs' and Class Members' PII and PHI from being compromised.

***Defendant's Conduct Violates Federal Law, Including the Rules and Regulations of HIPAA and HITECH***

81.    Defendant has a statutory duty under HIPAA and other federal or state statutes to safeguard Plaintiffs' and Class Members' data.

82.    Moreover, Plaintiffs and Class Members surrendered their highly sensitive personal data under the implied condition that such information would be kept private and secure. Accordingly, Defendant also has an implied duty to safeguard their data, independent of any statute.

83.    Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq.* These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI like the data Defendant left unguarded.  The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA.  These rules include 45 C.F.R. § 164.306(a)(1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

84.    Defendant is a covered entity pursuant to HIPAA. See 45 C.F.R. § 160.102. Defendant must therefore comply with the HIPAA Privacy Rule and Security Rule. See 45 C.F.R. Part 160 and Part 164, Subparts A through E.

85.    Defendant is a covered entity pursuant to the Health Information Technology Act ("HITECH").[18] See 42 U.S.C. §17921, 45 C.F.R. § 160.103.

86.    Because Defendant is covered by HIPAA (45 C.F.R. § 160.102), it is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E

---

[18] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

87.    HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for the protection of health information.

88.    HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

89.    HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

90.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

91.    HIPAA's Security Rule requires Defendant to do the following:

a) Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b) Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c) Protect Against reasonably anticipated uses or disclosures of such information that are not permitted; and

d) Ensure compliance by its workforce.

92.    HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information" under 45 C.F.R. § 164.306(e), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic

protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

93.    Moreover, the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

94.    Plaintiffs' and Class Members' Personal and Medical Information, including their PII and PHI, is "protected health information" as defined by 45 CFR § 160.103.

95.    45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

96.    45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

97.    Plaintiffs' and Class Members' personal and medical information, including their PII and PHI, is "unsecured protected health information" as defined by 45 CFR § 164.402.

98.    Plaintiffs' and Class Members' unsecured protected health information has been acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

99.    Plaintiffs' and Class Members' unsecured protected health information acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

100.    Plaintiffs' and Class Members' unsecured protected health information that was acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

101.     Plaintiffs' and Class Members' unsecured protected health information was viewed by unauthorized persons in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

102.     After receiving notice that they were victims of a data breach that required the filing of a Breach Report in accordance with 45 CFR § 164.408(a), it is reasonable for recipients of that notice, including Plaintiffs and Class Members in this case, to believe that future harm (including identity theft) is real and imminent, and to take steps to mitigate that risk of future harm.

103.     HIPAA requires covered entities to protect against reasonably anticipated threats to the security of sensitive patient health information.

104.     Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

105.     This Data Breach is considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule:

A breach under the HIPAA Rules is defined as, "the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." See 45 C.F.R. 164.40.

106.     The Data Breach could have been prevented if Defendant implemented HIPAA mandated, industry standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored its obligations to its patients.

107.     It can be inferred from the Data Breach that Defendant either failed to implement, or inadequately implemented, information security policies or procedures in place to protect Representative Plaintiffs' and Class Members' PII and PHI.

108.     Upon information and belief, Defendant's security failures include, but are not limited to:

a. Failing to maintain an adequate data security system and safeguards to prevent data loss;

20

b. Failing to mitigate the risks of a data breach and loss of data, including identifying internal and external risks of a security breach;

c. Failing to ensure the confidentiality and integrity of electronic protected health information Defendant creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d. Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

g. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2);

h. Failing to protect against any reasonably-anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3);

j. Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502, *et seq.*; and

k. Retaining information past a recognized purpose and not deleting it.

109. Upon information and belief, prior to the Breach, Defendant was aware of its security failures but failed to correct them or to disclose them to the public, including Plaintiffs and Class Members.

21

110.     The implementation of proper data security processes requires affirmative acts. Accordingly, Defendant knew or should have known that it did not make such actions and failed to implement adequate data security practices.

111.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required Defendant to provide notice of the Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

112.     Because Defendant has failed to comply with industry standards, while monetary relief may cure some of Plaintiffs' and Class Members' injuries, injunctive relief is necessary to ensure Defendant's approach to information security is adequate and appropriate. Defendant still maintains the PII and PHI of Plaintiffs and Class Members; and without the supervision of the Court via injunctive relief, Representative Plaintiffs' and Class Members' PII and PHI remains at risk of subsequent Data Breaches.

113.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII and PHI and financial information in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PII and PHI and financial information of Plaintiffs and Class Members.

114.     Defendant owed a duty to Plaintiffs and Class Members to ensure that the Private Information it collected and was responsible for was adequately secured and protected.

115.     Defendant owed a duty to Plaintiffs and Class Members to create and implement reasonable data security practices and procedures to protect the PII and PHI and financial information in its possession, including not sharing information with other entities who maintained sub-standard data security systems.

116.    Defendant owed a duty to Plaintiffs and Class Members to implement processes that would immediately detect a breach that impacted the Private Information it collected and was responsible for in a timely manner.

117.    Defendant owed a duty to Plaintiffs and Class Members to act upon data security warnings and alerts in a timely fashion.

118.    Defendant owed a duty to Plaintiffs and Class Members to disclose if its data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust this Private Information to Defendant.

119.    Defendant owed a duty of care to Plaintiffs and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

120.    Defendant owed a duty to Plaintiffs and Class Members to mitigate the harm suffered by the Representative Plaintiffs' and Class Members' as a result of the Data Breach.

### *Defendant Violated FTC Guidelines Prohibiting Unfair or Deceptive Acts*

121.    Defendant is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.  *See e.g., FTC v. Wyndham Corp.*, 799 F.3d 236 (3d Cir. 2015).

122.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[19]

---

[19]    https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited November 23, 2023).

23

123.    The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.[20]

124.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

125.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

126.    Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

127.    Defendant was at all times fully aware of its obligations to protect Plaintiffs' and Class Members' Private Information because of its business model of collecting Private Information and storing such information. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### *Value of the Relevant Sensitive Information*

128.    While the greater efficiency of electronic health records translates to cost savings for providers, it also comes with the risk of privacy breaches. These electronic health records contain a plethora of sensitive information (e.g., patient data, patient diagnosis, lab results, RX's, treatment plans) that is valuable to cyber criminals. One patient's complete record can be sold for

---

[20]    https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited June 12, 2023).

hundreds of dollars on the dark web. As such, PII and PHI and financial information are valuable commodities for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on a number of underground internet websites. Unsurprisingly, the healthcare industry is at high risk for and acutely affected by cyberattacks.

129.    The high value of PII and PHI and financial information to criminals is further evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[21] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[22] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[23]

130.    Between 2005 and 2019, at least 249 million people were affected by health care data breaches.[24] Indeed, during 2019 alone, over 41 million healthcare records were exposed, stolen, or unlawfully disclosed in 505 data breaches.[25] In short, these sorts of data breaches are increasingly common, especially among healthcare systems, which account for 30.03% of overall health data breaches, according to cybersecurity firm Tenable.[26]

131.    These criminal activities have and will result in devastating financial and personal losses to Plaintiffs and Class Members. For example, it is believed that certain PII compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma. Such fraud will be an omnipresent threat

---

[21] Your personal data is for sale on the dark web. Here's how much it costs, Digital Trends, Oct. 16, 2019, available at https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed November 22, 2023).

[22] Id.

[23] In the Dark, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed November 27, 2023).

[24] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133 (last accessed November 27, 2023).

[25] https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/ (last accessed November 27, 2023).

[26] https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-incovid-19-era-breaches (last accessed November 22, 2023).

for Plaintiffs and Class Members for the rest of their lives. They will need to remain constantly vigilant.

132.   The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

133.   Identity thieves can use PII and PHI and financial information, such as that of Plaintiffs and Class Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

134.   The ramifications of Defendant's failure to keep secure Plaintiffs' and Class Members' PII and PHI are long lasting and severe. Once PII and PHI and financial information is stolen, particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, the PII and PHI of Plaintiffs and Class Members was taken by hackers to engage in identity theft or to sell it to other criminals who will purchase the PII and PHI for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

135.   There may be a time lag between when harm occurs versus when it is discovered, and also between when PII and PHI and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that

26

1
2

information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[27]

3
4
5
6
7
8
9

136.   The harm to Plaintiffs and Class Members is especially acute given the nature of the leaked data. Medical identity theft is one of the most common, most expensive, and most difficult-to-prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more than identity thefts involving banking and finance, the government and the military, or education.[28]

10
11
12
13
14

137.   "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[29]

15
16
17

138.   If cyber criminals manage to access financial information, health insurance information and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant may have exposed Plaintiffs and Class Members.

18
19
20
21
22

139.   A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[30] Almost half of medical identity theft victims lose their healthcare coverage as a result

23
24
25
26
27

---

[27]Report to Congressional Requesters, GAO, at 29 (June 2007), available at: http://www.gao.gov/new.items/d07737.pdf (last accessed November 27, 2023).
[28] Michael Ollove, The Rise of Medical Identity Theft in Healthcare, KAISER HEALTH NEWS (Feb. 7, 2014), https://khn.org/news/rise-of-indentity-theft/ (last accessed November 27, 2023).
[29] Id.
[30] See Elinor Mills, Study: Medical Identity Theft is Costly for Victims, CNET (Mar. 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last accessed November 27, 2023).

28

of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all.[31]

140.   Data breaches are preventable.[32] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[33]  She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised."[34]

141.   Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[35]

142.   The Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards and concomitant duties mandated and required by HIPAA regulations.

**CLASS ALLEGATIONS**

143.   Pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3), and (c)(4), Plaintiffs assert common law claims and California state law claims, as more fully alleged hereinafter, on behalf of the following Nationwide Class. In addition, Plaintiff Autry asserts common law claims, as more fully alleged hereinafter on behalf of an Arkansas Class, Plaintiff Benjamin asserts common law claims and California state law claims, as more fully alleged hereinafter on behalf of a

---

[31] Id.; see also Healthcare Data Breach: What to Know About them and What to Do After One, EXPERIAN, available at https://www.experian.com/blogs/ask-experian/healthcare-data-breachwhat-to-know-about-them-and-what-to-do-after-one/ (last accessed November 27, 2023).
[32] Lucy L. Thompson, Despite the Alarming Trends, Data Breaches Are Preventable, in DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012)
[33] *Id*. at 17.
[34] *Id*. at 28.
[35] *Id.*

California Class and Plaintiff Phillips asserts common law claims, as more fully alleged hereinafter on behalf of a Pennsylvania Class, defined as follows:

> **Nationwide Class**: All residents of the United States whose PII or PHI was accessed or otherwise compromised as a result of the Data Breach.
>
> **Arkansas Class**: All residents of the state of Arkansas whose PII or PHI was accessed or otherwise compromised as a result of the Data Breach.
>
> **California Class**: All residents of the state of California whose PII or PHI was accessed or otherwise compromised as a result of the Data Breach.
>
> **Pennsylvania Class**: All residents of the state of Pennsylvania whose PII or PHI was accessed or otherwise compromised as a result of the Data Breach.

144.    Members of the Nationwide Class, Arkansas Class, California Class, and the Pennsylvania Class are referred to herein collectively as "Class Members" or "Class."

145.    Excluded from the Class are Defendant, any entity in which Defendant have a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

146.    The proposed Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

147.    **Numerosity**: The exact number of members of the Class is unknown to Plaintiffs at this time but Defendant provides fulfillment services to approximately three million consumers and delivers prescriptions to all fifty states.[36]  Defendant has acknowledged that the number of individuals affected by the Data Breach was approximately 2.3 million persons, indicating that there approximately 2.3 million members of the Class, making joinder of each individual

---

[36] https://www.truepill.com/, last visited November 27, 2023.

impracticable.[37] Ultimately, members of the Class will be readily identified through Defendant's records.

148.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a.    Whether Defendant failed to adequately safeguard Plaintiffs' and the Class Members' PII and PHI;

b.    Whether Defendant failed to protect Plaintiffs' and the Class Members' PII and PHI, as promised;

c.    Whether Defendant's computer system systems and data security practices used to protect Plaintiffs' and the Class Members' PII and PHI violated HIPAA, federal, state and local laws, or Defendant's duties;

d.    Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiffs' and the Class Members' PII and PHI properly and/or as promised;

e.    Whether Defendant violated the consumer protection statutes, data breach notification statutes, state unfair practice statutes, state privacy statutes, and state medical privacy statutes, HIPAA, and/or FTC law or regulations, imposing duties upon Defendant, applicable to Plaintiffs and Class Members;

f.    Whether Defendant failed to notify Plaintiffs and members of the Class about the Data Breach as soon as practical and without delay after the Data Breach was discovered;

g.    Whether Defendant acted negligently in failing to safeguard Plaintiffs' and the Class Members' PII and PHI;

---

[37] https://www.kiplinger.com/personal-finance/truepill-data-breach, last visited November 27, 2023.

h.    Whether Defendant entered into contracts that included contract terms requiring Defendant to protect the confidentiality of Plaintiffs' PII and PHI and have reasonable security measures;

i.    Whether Defendant's conduct described herein constitutes a breach of said contracts;

k.    Whether Plaintiffs and the Class Members are entitled to damages as a result of Defendant's wrongful conduct;

m.    Whether Plaintiffs and the Class Members are entitled to restitution as a result of Defendant's wrongful conduct; What equitable relief is appropriate to redress Defendant's wrongful conduct; and

n.    What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Class Members.

149.    **Typicality**: Plaintiffs' claims are typical of the claims of each of the Class Members. Plaintiffs and the Class Members sustained damages as a result of Defendant's uniform wrongful conduct during transactions with them.

150.    **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and there are no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the members of the proposed Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

151.    **Separateness**: This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would establish incompatible standards of conduct for the Defendant or would be dispositive of the interests of members of the proposed Class. Furthermore, the Private Information collected by Defendant still exists, and is

still vulnerable to future attacks – one standard of conduct is needed to ensure the future safety of the PHI and PII collected, stored, and maintained by Defendant.

152. **Class-wide Applicability**: This case is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Plaintiffs and proposed Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards members of the Class, and making final injunctive relief appropriate with respect to the proposed Class as a whole. Defendant's practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiffs' challenge to those practices hinges on Defendant's conduct with respect to the proposed Class as a whole, not on individual facts or law applicable only to Plaintiffs.

153. **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and the members of the Class. The injuries suffered by each individual member of the Class are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. Absent a class action, it would be virtually impossible for individual members of the Class to obtain effective relief from Defendant. Even if Class Members could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiffs and the Class)**

154. Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate the above allegations by reference.

155.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class. In the alternative, Plaintiff Autry brings this claim on behalf of the Arkansas Class, Plaintiff Benjamin brings this claim on behalf of the California Class, and Plaintiff Phillips brings this claim on behalf of the Pennsylvania Class.

156.    The PII and PHI of Plaintiffs and Class Members was provided to Defendant, including Defendant, in order to receive healthcare services.

157.    Defendant knew, or should have known, of the risks and responsibilities inherent in collecting and storing the PII and PHI of Plaintiffs and Class Members.

158.    As described above, Defendant owed a duty of care to Plaintiffs and Class Members whose PII and PHI had been entrusted to Defendant.

159.    Defendant breached its duty to Plaintiffs and Class Members by failing to secure their PII and PHI from unauthorized disclosure to third parties.

160.    Defendant acted with wanton disregard for the security of Plaintiffs' and Class Members' PII and PHI.

161.    A "special relationship" exists between Defendant and the Plaintiffs and Class Members. Defendant entered into a "special relationship" with Plaintiffs and Class Members because it collected and/or stored the PII and PHI of Plaintiffs and the Class Members.

162.    But for Defendant's wrongful and negligent breach of its duty owed to Plaintiffs and the Class Members, Plaintiffs and the Class Members would not have been injured.

163.    Because of Defendant's wrongful and negligent breach of its duty to Plaintiffs and the Class Members, they have suffered, and will continue to suffer, ascertainable losses, economic damages, and other actual injury and harm, including, *inter alia*, (i) the resulting increased and imminent risk of future ascertainable losses, economic damages and other actual injury and harm, (ii) the opportunity cost and value of lost time they must spend to monitor their financial accounts and other accounts—for which they are entitled to compensation; and (iii) emotional distress as a result of having their Private Information accessed and exfiltrated in the Data Breach.

164.    The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of its duty.  Defendant knew or should have known it was failing to meet its duty, and that Defendant's breach of such duties would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the unauthorized exposure of their PII and PHI.

165.    As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT II**
**Negligence *Per Se***
**(On Behalf of Plaintiffs and the Class)**

166.    Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate the above allegations by reference.

167.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class. In the alternative, Plaintiff Autry brings this claim on behalf of the Arkansas Class, Plaintiff Benjamin brings this claim on behalf of the California Class, and Plaintiff Phillips brings this claim on behalf of the Pennsylvania Class.

168.    Defendant is a covered entity pursuant to HIPAA, *see* 45 C.F.R. § 160.102, and pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

169.    Pursuant to HIPAA (42 U.S.C. §1302d *et. seq.*), Defendant had a duty to implement reasonable safeguards to protect Plaintiffs' and Class Members' PII and PHI.

170.    As persons who shared their "protected health information" with Defendant, Plaintiffs and Class Members are in the class of persons for whose protection HIPAA was enacted to protect.

171.   Defendant breached its duty to Plaintiffs and Class Members under HIPAA (42 U.S.C. § 1302d *et. seq.*), by failing to implement reasonable safeguards to protect Plaintiffs' and Class Members' PII and PHI from unauthorized access.

172.   Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

173.   Defendant's wrongful and negligent breach of its duty was the proximate cause of the injury to Plaintiffs and Class Members, and the injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duty, and that Defendant's breach of that duty would cause Plaintiffs and Class Members to experience the foreseeable harms associated with the unauthorized access to their PII and PHI.

174.   Because of Defendant's wrongful and negligent breach of its duty to Plaintiffs and the Class Members, they have suffered, and will continue to suffer, ascertainable losses, economic damages, and other actual injury and harm, including, *inter alia*, (i) the resulting increased and imminent risk of future ascertainable losses, economic damages and other actual injury and harm, (ii) the opportunity cost and value of lost time they must spend to monitor their financial accounts and other accounts—for which they are entitled to compensation; and (iii) emotional distress as a result of having their Private Information accessed and exfiltrated in the Data Breach.

175.   As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

### COUNT III
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiffs and the Class)**

176.   Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate the above allegations by reference.

177. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class. In the alternative, Plaintiff Autry brings this claim on behalf of the Arkansas Class, Plaintiff Benjamin brings this claim on behalf of the California Class, and Plaintiff Phillips brings this claim on behalf of the Pennsylvania Class.

178. Plaintiffs and Class Members entered into valid, binding, and enforceable express or implied contracts with entities affiliated with or serviced by Defendant, as alleged above.

179. The contracts respecting which Plaintiffs and Class Members were intended beneficiaries were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations (both explicit and fairly implied) and not to impair the rights of the other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the implied covenants that Defendant would act fairly and in good faith in carrying out its contractual obligations to take reasonable measures to protect Plaintiffs' PII and PHI from unauthorized disclosure and to comply with state laws and regulations.

180. A "special relationship" exists between Defendant and the Plaintiffs and Class Members. Defendant entered into a "special relationship" with Plaintiffs and Class Members by providing medical services, specifically prescription fulfillment and, in doing so, collected and maintained the PHI and PII of Plaintiffs and Class Members, pursuant to its requirements and Privacy Notice.

181. Despite this special relationship with Plaintiffs, Defendant did not act in good faith and with fair dealing to protect Plaintiffs' and Class Members' PII and PHI.

182. Plaintiffs and Class Members performed all conditions, covenants, obligations, and promises owed to Defendant.

183. Defendant's failure to act in good faith in complying with the contracts denied Plaintiffs and Class Members the full benefit of their bargain, and instead they received healthcare and related services that were less valuable than what they paid for and less valuable than their reasonable expectations.

184.   Accordingly, Plaintiffs and Class Members have been injured as a result of Defendant's breach of the covenant of good faith and fair dealing respecting which they are express or implied beneficiaries, and are entitled to damages and/or restitution in an amount to be proven at trial.

**COUNT IV**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiffs and the Class)**

185.   Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate the above allegations by reference.

186.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class. In the alternative, Plaintiff Autry brings this claim on behalf of the Arkansas Class, Plaintiff Benjamin brings this claim on behalf of the California Class, and Plaintiff Phillips brings this claim on behalf of the Pennsylvania Class.

187.   Defendant accepted the special confidence placed in it when it was entrusted with the PHI and PII of Plaintiffs and Class Members.  There was an understanding between the parties that the healthcare service provider Defendant would act for the benefit of Plaintiffs and Class Members in preserving the confidentiality of their PII and PHI.

188.   Defendant became the guardian of Plaintiffs' and Class Members' PII and PHI and accepted a fiduciary duty to act primarily for the benefit of its patients, including Plaintiffs and the Class Members, including safeguarding Plaintiffs' and the Class Members' PII and PHI.

189.   Defendant's fiduciary duty to act for the benefit of Plaintiffs and Class Members pertains as well to matters within the scope of Defendant's medical relationship Plaintiffs and Class Members, in particular, to keep secure the PII and PHI of those patients.

190.   Defendant breached its fiduciary duty to Plaintiffs and Class Members by (a) failing to protect their PII and PHI; and (b) by otherwise failing to safeguard Plaintiffs' and the Class Members' PII and PHI.

191.   As a direct and proximate result of Defendant's breach of its fiduciary duty, Plaintiffs and/or Class Members have suffered and/or will suffer injury, including but not limited

to: (a) the compromise of their PII and PHI; and (b) the diminished value of the services they received as a result of unauthorized exposing of Plaintiffs' and Class Members' PII and PHI.

192.     As a direct and proximate result of Defendant's breach of its fiduciary duty, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**COUNT V**
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Class)**

193.     Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate the above allegations by reference.

194.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class. In the alternative, Plaintiff Autry brings this claim on behalf of the Arkansas Class, Plaintiff Benjamin brings this claim on behalf of the California Class, and Plaintiff Phillips brings this claim on behalf of the Pennsylvania Class.

195.     Defendant collected and maintained responsibility for the Private Information of Plaintiffs and the Class, including, *inter alia*, name, medication type, prescribing physician name, and demographic information in connection with the provision of services to Plaintiffs and the Class.

196.     At the time Defendant acquired the PII of Plaintiffs and the Class, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the PII and not take unjustified risks when storing the PII.

197.     Plaintiffs and the Class would not have entrusted their PHI and PII to Defendant had they known that Defendant would fail to adequately safeguard their PHI and PII.

198.     At the time the PHI and PII of Plaintiffs and the Class was entrusted to Defendant, Defendant published the Privacy Policy, agreeing to protect and keep private financial information of Plaintiffs and the Class.

199.     Implicit in the agreement between Plaintiffs and Class Members and Defendant to provide PII, it was the latter's obligation to: (a) use such PHI and PII for business purposes only,

(b) take reasonable steps to safeguard that PHI and PII, (c) prevent unauthorized disclosures of the PHI and PII, (d) provide Plaintiffs and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PHI and PII, (e) reasonably safeguard and protect the PHI and PII of Plaintiffs and Class Members from unauthorized disclosure or uses, and (f) retain the PHI and PII only under conditions that kept such information secure and confidential.

200.    In collecting and maintaining responsibility for the maintenance and protection of the PHI and PII of Plaintiffs and the Class and publishing the Privacy Policy, Defendant entered into contracts with Plaintiffs and the Class requiring Defendant to protect and keep secure the PII of Plaintiffs and the Class.

201.    Plaintiffs and the Class fully performed their obligations under the implied contracts by providing their PHI and PII to Defendant. \

202.    Defendant breached the contracts made with Plaintiffs and the Class by failing to protect and keep private financial information of Plaintiffs and the Class.

203.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; additional time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, credit freezes, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

204.    As a direct and proximate result of Defendant's breach of contract, Plaintiffs and the Class are at an increased risk of identity theft or fraud.

39

205.    As a direct and proximate result of Defendant's breach of contract, Plaintiffs and the Class are entitled to and demand actual, consequential, and nominal damages and injunctive relief, to be determined at trial.

## COUNT VI
**Violation of the California Confidentiality of Medical Information Act**
**(Cal. Civ. Code § 56, *et seq*.)**
**(On Behalf of Plaintiffs and the Class)**

206.    Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate the above allegations by reference.

207.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class. In the alternative, Plaintiff Autry brings this claim on behalf of the Arkansas Class, Plaintiff Benjamin brings this claim on behalf of the California Class, and Plaintiff Phillips brings this claim on behalf of the Pennsylvania Class.

208.    Under the California Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.* (hereinafter referred to as the "CMIA"), "medical information" means "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05.

209.    Additionally, Cal. Civ. Code § 56.05 defines "individually identifiable" as meaning that "the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the identity of the individual." Cal. Civ. Code § 56.05.

210.    Under Cal. Civ. Code § 56.101(a) of the CMIA:

> Every provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained

therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36.

211. At all relevant times, Defendant was a health care contractor within the meaning of Civil Code § 56.05(d) because it is a "medical group, independent practice association, pharmaceutical benefits manager, or medical service organization and is not a health care service plan or provider of health care."

212. Plaintiffs and the Class Members are Defendant's patients, as defined in Civil Code § 56.05(l).

213. The PHI and PII of Plaintiffs and the Class Members was provided to Defendant. At all relevant times, Defendant created, maintained, preserved, and stored said PII and PHI in the ordinary course business.

214. As a result of the Data Breach, Defendant has misused, disclosed, and/or allowed third parties to access and view Plaintiffs' and the Class Members' Private Information without their written authorization violated California Civil Code § 56, *et seq.*, and its legal duty to protect the confidentiality of such information.

215. Defendant also violated Sections 56.06 and 56.101 of the California CMIA, which prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential personal medical information.

216. As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiffs' and the California Class Members' Private Information was viewed by, released to, and disclosed to third parties without the written authorization of Plaintiffs or the members of the Class.

217. As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violation of the CMIA, Plaintiffs and the Class Members are entitled to (i) actual

1    damages, (ii) nominal damages of $1,000 per Plaintiff and Class Member, (iii) punitive damages

2    of up to $3,000 per Plaintiff and Class Member, and (iv) attorneys' fees, litigation expenses and

3    court costs under California Civil Code § 56.35.

**COUNT VII**
**Violation of California Unfair Competition Law**
**(Cal. Bus. & Prof. Code, § 17200,** *et seq.***)**
**(On behalf of Representative Plaintiffs and the Class)**

218.    Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate the
above allegations by reference.

219.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class. In
the alternative, Plaintiff Autry brings this claim on behalf of the Arkansas Class, Plaintiff
Benjamin brings this claim on behalf of the California Class, and Plaintiff Phillips brings this
claim on behalf of the Pennsylvania Class.

220.    Defendant violated California's Unfair Competition Law ("UCL") (Cal. Bus. &
Prof. Code, § 17200, *et seq.*) by engaging in unlawful, unfair or fraudulent business acts and
practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair
competition" as defined in the UCL, including, but not limited to, the following:

a) by representing that it would maintain adequate data privacy and security practices and
procedures to safeguard Plaintiffs' and Class Members' Private Information from unauthorized
disclosure, release, data breach, and theft; representing that they did and would comply with the
requirements of relevant federal and state laws pertaining to the privacy and security of the Private
Information of Plaintiffs' and the Class' Private Information; and omitting, suppressing, and
concealing the material fact of the inadequacy of their privacy and security protections for the
Private Information of Plaintiffs and the Class;

b) by soliciting and collecting the Private Information of Plaintiffs and the California Class
with knowledge that the information would not be adequately protected; and by failing to securely
store the Private Information of Plaintiffs and the Class;

42

1   c) by violating the privacy and security requirements of HIPAA, 42 U.S.C. §1302d, *et*

2   *seq*.; and

3   d) by violating the CMIA, California Civil Code section 56, *et seq*.

4   221.   These unfair acts and practices were immoral, unethical, oppressive, unscrupulous,

5   unconscionable, and/or substantially injurious to Plaintiffs and the Class. Defendant's practice

6   was also contrary to legislatively declared and public policies that seek to protect consumer data

7   and ensure that entities who solicit or are entrusted with personal data utilize appropriate security

8   measures, as reflected by laws like the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1302d, *et*

9   *seq*., and the CMIA, Cal. Civ. Code, § 56, *et seq*..

10   222.   As a direct and proximate result of Defendant's unfair and unlawful practices and

11   acts, Plaintiffs and the Class were injured and lost money or property, including but not limited

12   to the overpayments Defendant received to take reasonable and adequate security measures (but

13   did not), the loss of their legally protected interest in the confidentiality and privacy of their

14   Private Information, and additional losses described above.

15   223.   Defendant knew or should have known that its computer systems and data security

16   practices were inadequate to safeguard the Private Information of Plaintiffs and the Class and that

17   the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-

18   named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton

19   and reckless with respect to the rights of Plaintiffs and the Class.

20   224.   The Plaintiffs and the Class seek relief under the UCL, including restitution of

21   money or property that Defendant acquired by means of Defendant's deceptive, unlawful, and

22   unfair business practices, declaratory relief, attorney fees, costs and expenses (pursuant to Cal.

23   Code Civ. Proc., § 1021.5), and injunctive or other equitable relief.

24

25   **<u>PRAYER FOR RELIEF</u>**

26   WHEREFORE, Plaintiffs, on behalf of himself and the proposed Class, prays for relief

27   and judgment against Defendant as follows:

28

43

A. certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representative of the Class, and designating Plaintiffs' counsel as Class Counsel;

B. declaring that Defendant's conduct violates the laws referenced herein;

C. finding in favor of Plaintiffs and the Class on all counts asserted herein;

D. awarding Plaintiffs and the Class compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

E. awarding Plaintiffs and the Class appropriate relief, including actual, nominal and statutory damages;

F. awarding Plaintiffs and the Class punitive damages;

G. awarding Plaintiffs and the Class civil penalties;

H. granting Plaintiffs and the Class declaratory and equitable relief, including restitution and disgorgement;

I. enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

J. awarding Plaintiffs and the Class the costs of prosecuting this action, including expert witness fees;

K. awarding Plaintiffs and the Class reasonable attorneys' fees and costs as allowable by law;

L. awarding pre-judgment and post-judgment interest; and

M. granting any other relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all triable issues.

DATED:  November 29, 2023                Respectfully submitted,

**/s/SAMUEL M. WARD**

44

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BARRACK, RODOS & BACINE**
STEPHEN R. BASSER
SAMUEL M. WARD
600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:   (619) 230-1874
sbasser@barrack.com
sward@barrack.com

**EMERSON FIRM, PLLC**
JOHN G. EMERSON*
2500 Wilcrest, Suite 300
Houston, TX 77042
Phone: 800-551-8649
Fax: 501-286-4659
jemerson@emersonfirm.com

*Counsel for Plaintiffs*

**Pro Hac Vice* application to be filed